172 So.2d 74

**STATE of Louisiana**

v.

**Joseph VALCOUR et al.**

**No. 47446.**

Feb. 25, 1965.

Donald S. Klein, New Orleans, for defendant and appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., James L. Alcock, Asst. Dist. Atty., for appellee.

HAMLIN, Justice:

Joseph Valcour and Wanda Palmer were jointly charged by bill of information with wilfully and unlawfully possessing and having under their control a narcotic drug, to-wit, heroin, (a violation of LSA–R.S. 40:-962).

Wanda Palmer withdrew a plea of not guilty, previously entered, and pleaded guilty as charged; she was sentenced to serve a period of five years at hard labor in the Louisiana State Penitentiary. Joseph Valcour was tried, convicted, found guilty, and sentenced to serve ten years at hard labor in the Louisiana State Penitentiary (LSA–R.S. 15:529.1).

Joseph Valcour appeals to this Court and presents for our consideration one bill of exceptions, which was taken to the trial court's overruling his motion for a new trial.

The record discloses that the defendants were apprehended at the home of Wanda Palmer; that Wanda was holding a "narcotic fix" in her hands at the time of arrest.

Wanda Palmer had commenced serving her sentence and was brought to New Orleans to testify at Valcour's trial. She testified at Valcour's trial that on the evening the crime was alleged to have been commit-

ted, Valcour came to her apartment and told her that he had something that he wanted her to try; that he handed her a needle and medicine dropper (the evidence shows that the dropper contained heroin) when he heard detectives approaching her apartment.[1] She stated at Valcour's trial that she had never taken narcotics; that at the time her sentence was imposed she was lying when she testified that the narcotic fix belonged to her. She further stated at Valcour's trial that she told the detectives who entered her apartment that the outfit belonged to Valcour; she emphasized that she was then telling the truth.

In his motion for a new trial, Valcour alleged in part:

"There was no evidence whatsoever to prove that the defendant, Joseph Valcour, took any active or passive part in the offense of possession of narcotics. The only testimony which tended to implicate Joseph Valcour was the testimony of Wanda Palmer. Wanda Palmer has since the date of her testimony, completely changed her testimony, and now states that Joseph Valcour was in no way involved with the offense to which she plead guilty, and that he had no knowledge of the fact that she was in possession of narcotics.

"That Wanda Palmer states now that she testified as she did because she was jealous and if she were to spend time in the State Penitentiary, then the defendant, Joseph Valcour, would also.

"The only evidence tending to suggest that Joseph Valcour had been concerned with the commission of the offense of possession of narcotics was the testimony of Wanda Palmer.

"That the evidence which counsel now urges is newly discovered and was not available at the time of trial."

Attached to the motion for a new trial were two letters written to Valcour by Wanda from the State Penitentiary. The general import of the letters was that because of jealousy, jealousy of the defendant Valcour being out with another woman, she had lied at the time of his trial. The letters were written on April 30, 1964 and May 3, 1964; the defendant Valcour's trial concluded on April 27, 1964.

In opposition to Valcour's request for a new trial, the State attached a written statement made and signed by Wanda on April 23, 1964 while in Parish Prison in New Orleans. The statement recites in part:

"It was about 9:00 P.M. on the 11 November 1963, that Joseph Valcour came and he had the hypo needle. He went into the bathroom and when he came out he had it fixed. When he came out from the bathroom, he said

---

1. The evidence reflects that the detectives were looking for Valcour for the purpose of investigating an entirely different matter.

'Now you're gonna take some of this too,' and I said 'No, I don't want none of that' and he said 'It's good' and just about that time there was a noise outside and the dogs was barking and just about that time he took the needle and handed it to me. At that time the detectives were standing at the door of the living room. He had also threatened me at that time and I was scared of him and he had also threatened my mother.

\* \* \* \* \* \*

"Q. Is there anything else you would like to tell us about Jo Jo or about the Narcotics?

"A. Jo Jo had just been out about 4 months from doing time in the pen. He did 20 months. I decided to give him another chance because I thought he would straighten out. I was afraid of him and I was thinking about going to the law because I was afraid of him.

"Q. Have you ever seen him use dope on any other occasion?

"A. No."

A lengthy hearing was held on the motion for a new trial. After having been apprised of all of her constitutional rights, Wanda testified that the evidence she would give would be the truth; that the narcotic fix she had in her hand at the time of her arrest belonged to her and not to Valcour. She said that she was changing her story because she wanted to tell the truth.

In his Per Curiam to Bill of Exceptions No. 1, the trial judge states in part:

"After hearing the testimony not only of Wanda Palmer but of the Assistant District Attorneys and the police, the Court was convinced that Wanda Palmer had testified falsely at the hearing and denied the Motion.

\* \* \* \* \* \*

"The witness, Wanda Palmer, at the hearing was obviously disturbed and admitted that she was afraid of what would happen at Angola because of her testimony, that she was afraid of Valcour and she was afraid of the Court.

"In contrast to the trial she was a difficult witness on the hearing and she was obviously lying.

"She repudiated her attorney; she accused the Assistant District Attorney of influencing her to testify against Valcour; she accused the police of influencing at the original arrest; of influencing her to lie against Valcour; to say that the scarf allegedly used as a tourniquet and found in Valcour's possession was used by him, when in truth the scarf was found later.

"In each instance she was contradicted by witnesses called by the State.

"On cross-examination she admitted that she was afraid of Valcour and that he had threatened her and also that she told the Assistant District Attorney

that she wanted to help Valcour because he promised to take care of her children.

"The testimony of Wanda Palmer on the hearing on the Motion for a New Trial was obviously false and the Court is convinced that she was testifying from fear.

"The jury heard Wanda Palmer say that she made a statement inconsistent with her testimony on the trial.

\*　　\*　　\*　　\*　　\*　　\*

"The evidence justifies the verdict of the jury and, in my opinion, the defendant received a fair and impartial trial and the verdict of the jury should not be disturbed.

"For the reasons hereinabove recited, I overrule the Motion for a New Trial."

Counsel for Valcour argues that Wanda Palmer's letters and her testimony taken at the hearing for a new trial constitute newly discovered evidence, and he urges that the trial judge was in error in not granting a new trial. He states in his brief:

"It may be argued by Plaintiff-Appellee that the knowledge of Wanda Palmer's testimony was had by Defendant-Appellant's Counsel and that this testimony should have been elicited from the witness at the time of the trial. Counsel for Defendant-Appellant urges that though it was suspected that the

witness was being untruthful when she first testified at the trial of this cause, there was no means by which Counsel could un-seat the witness's testimony."

LSA–R.S. 15:509 provides that a new trial ought to be granted whenever since verdict new material evidence has been discovered that could not have been discovered with reasonable diligence before or during trial. LSA–R.S. 15:511 further provides that in order to entitle the accused to a new trial on the ground of newly-discovered evidence, it must affirmatively appear that notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial, but has been discovered since; that said evidence is not merely cumulative; that it does not merely corroborate or impeach the credibility or testimony of any witness examined on the trial; that it is so material that it ought to produce a different result than the verdict reached, and that it is admissible.

In State v. Saba, 203 La. 881, 14 So.2d 751, we said that the law is clear with reference to a motion for a new trial that the proposed evidence must not only be newly discovered, but it must be shown that it could not have been discovered by the use of reasonable diligence before the verdict; and in State v. Gray, 192 La. 1081, 190 So. 224, we held that applications for new trials when based on the ground of newly discovered evidence should be received with extreme caution. See, State v. Washington, 36 La.

Ann. 341; State v. Jones, 112 La. 980, 36 So. 825.

It is a legal requirement that a verdict must remain undisturbed unless it is made to appear, in the manner required, that an irregularity has been committed, sufficient to satisfy setting it aside. State v. Jones, supra. Under LSA–R.S. 15:511, supra, and our uniform jurisprudence, the test to be employed by the district judge in considering a motion for a new trial based on newly-discovered evidence is not simply whether another jury might bring in a different verdict—that is always a speculative matter —it is whether the new evidence is "so material that it ought to produce a different result than the verdict reached * * *." If the judge finds that the newly-discovered evidence is suspicious or incredible, then he properly exercises his discretion in denying a new trial as such evidence ought not produce a different result in the matter. State v. Bell, 242 La. 585, 137 So.2d 342. A motion for a new trial is properly refused, when based on evidence that could have been produced at the trial by the exercise of due diligence, or on mere negative evidence that would not probably have affected the result, or on the affidavit of the accused, not corroborated by that of alleged newly-discovered witnesses. State v. Pecarino, 128 La. 269, 54 So. 794.

2. "Further, the newly discovered evidence urged as a basis for a new trial would merely impugn the credibility of a witness who testified during the trial before

Our jurisprudence is replete to the effect that the granting or refusing of motions for a new trial rests within the sound judicial discretion of trial judges, and great reliance is placed upon them by appellate courts that they will exercise that discretion well and soundly. State v. Bradley, 166 La. 1010, 118 So. 116; State v. Wilburn, 196 La. 113, 198 So. 765; State v. Gray, supra; State v. Washington, supra.

We have carefully read Wanda Palmer's testimony given during Valcour's trial and on his motion for a new trial. She urged the truthfulness of her testimony many times during both hearings; she gave as personal her reason for saying at one hearing that the narcotic fix belonged to her and then stating at another hearing that Valcour brought it to her apartment. As stated supra, during Valcour's trial she said that she had been untruthful in her testimony at the time her sentence was imposed. At Valcour's trial the jury had an opportunity to appraise Wanda Palmer's credibility;[2] it heard many other witnesses testify; it also heard Valcour, who took the stand in his own behalf, testify emphatically that he was not guilty of possessing narcotics and state that he was surprised to see the narcotic fix in Wanda's hands when the detectives apprehended her.

the jury, and it is well settled that such evidence does not entitle an accused to a new trial. * * *" State v. Richard, 223 La. 674, 66 So.2d 589.

The jury, after deliberation, found Valcour guilty.

 After reading the trial judge's Per Curiam and all of the testimony attached to Bill of Exceptions No. 1, we conclude that the trial judge did not abuse his discretion in overruling defendant Valcour's motion for a new trial. Such purported new evidence as that which Wanda Palmer proposes to give is not so material that it ought to produce a different result than the verdict reached. State v. Bell, supra, 242 La. 585, 137 So.2d 342.

Bill of Exceptions No. 1 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.