215 So.2d 799

**STATE of Louisiana**

v.

**Earl WILLIAMS, Jr.**

No. 48931.

Nov. 12, 1968.

Rehearing Denied Dec. 16, 1968.

G. Wray Gill, Sr., George M. Leppert, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Samuel C. Cashio, Dist. Atty., Charles H. Dameron, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

Appellant, Earl Williams, Jr., a Negro, was indicted and convicted of rape in the District Court of Iberville Parish and sentenced to death.

The facts giving rise to this prosecution may be briefly stated as follows: While her husband was away at work in New Orleans on the night of January 18, 1964, the prosecutrix was alone with her four small children—ranging in ages from eleven months to four years—in her home in the town of Plaquemine in Iberville Parish. After viewing television with their mother until about nine o'clock, the three older children were put to bed. The prosecutrix lingered through another program and then bathed and retired.

Sometime later, after midnight, she was awakened from a sound sleep to behold a Negro man, whom she later positively identified at the trial as Earl Williams, Jr., tugging at her. A struggle ensued during which the Negro man struck, choked and mauled the prosecutrix, until, bleeding from the mouth, eyes and ears, choking on two teeth he had knocked out of their sockets, barely conscious and gasping for breath from his vise-like grip on her throat, she was forcibly raped and ravished.

The Negro fled into the night, leaving his wrist watch at the scene. The prosecutrix called her mother and the sheriff, who came to her aid within a short time. As a result of the shock and the beating and mauling she received, it was necessary for the prosecutrix to be hospitalized for eight days.

Williams was apprehended by law officers shortly thereafter four or five blocks away. Later that morning he identified the watch found at the scene as his own, and, in his own handwriting, he gave a written confession of the crime.

By a number of bills taken at the trial in May 1964, and at the time of sentencing in December 1966, appellant presents four issues, which he urges on this appeal.

I.

The first contention is that there was discrimination against Negroes in the selection of the grand and petit juries. This issue was formed by a motion to quash the indictment because of systematic exclusion of Negroes from, and token inclusion of

Negroes on, the grand jury and by a motion to quash the petit jury venire for the same reasons. From the denial of these motions, bills were reserved to which are attached the motions, a stipulation between the prosecution and the defense, and extracts from the testimony of a member of the jury commission. A record of the proceedings is also before us and those portions which are pertinent to the bills of exceptions have been considered on this appeal.

The jury commissioner who testified at the trial of these motions said that, in the selection of the grand and petit jury venires, the members of the jury commission made the selections from people they knew. Defense counsel relies heavily upon this isolated statement to make the argument that, by selecting the jurors from those they knew, the jury commissioners necessarily made their selections from a restricted segment of the population; and, therefore, a systematic exclusion took place and the grand and petit jurors were not drawn from a venire representing a cross-section of the community. However, this vague testimony is hardly adequate to support the contention.

In any event, since Iberville Parish had a population of only 29,939 and the commission is composed of six members, including the Clerk of Court who is ex officio a member, it does not follow that a system of exclusion took place if they selected only from those they knew. For it is entirely feasible, and indeed probable, if the members were active in the affairs of their parish, that between them they "knew" substantially all of the citizens of age who were eligible for jury duty. The probability is heightened when it is considered that women do not serve upon juries in this state unless they have recorded their desire to serve with the Clerk of Court, and few do so; hence the commissioners would only have to know the adult male population to know those eligible for jury service, probably less than half of the total population.

Aside from the inference we have drawn from the testimony of the jury commissioner, when questioned by defense counsel, he testified that Negroes were selected in the same manner as whites, a fact which affirmatively refutes the argument that the action of the jury commission was discriminatory.

No designation of the color of the citizens considered for jury duty is made in the records of the jury commission, and, it is stipulated that it is impossible to ascertain the number of white or colored people who have been placed in the general venire from which the grand or petit juries have been selected for the past five years. Since 1948, according to the stipulation, the minimum number of Negroes who served on any grand jury was one and the maximum number was four, and, on an average,

approximately two Negroes served on each grand jury in that time. One Negro served on the grand jury which indicted the defendant, although there were four on the venire of 20 from which the grand jury panel was drawn by lot. Two Negroes were on the petit jury venire of thirty, and the record is silent on the number on the tales jury list from which the petit jury panel was selected which tried appellant, but only one Negro actually sat upon the jury at the trial. Another Negro was peremptorily challenged by counsel for the defense.

During the five years preceding the trial of appellant, according to the stipulation, only one criminal jury trial occurred and no Negro served on that jury. The record pertaining to the jury which served in that case is silent as to whether Negroes were on the venire from which the jury was chosen; nor does it disclose if the accused at that time was Negro or white. We do not know, therefore, whether Negroes did not serve on the jury because they were challenged for cause, challenged peremptorily either by the prosecution or defense, or excused for good and sufficient reasons by the judge. Prior to this five-year period, however, Negroes were on the petit jury venires and panels but did not serve usually because they were challenged either peremptorily or for cause prior to trial. Again, whether the challenges were by the prosecution or defense does not appear from the record.

There were several racial marches or demonstrations in Iberville Parish between August 19, 1963 and September 1963, but the relevancy of this stipulation to the issue under consideration has not been made clear and it is not urged in the brief. We surmise that it had to do with another contention—a motion for change of venue which has not been urged on appeal.

Standing alone, the evidence in the record is inconclusive. It does not establish a prima facie case nor does it establish that there was discrimination in the selection of the grand and petit juries. The accused who complains of discrimination bears the burden of establishing the fact. State v. Goree, 242 La. 886, 139 So.2d 531 (1962). Purposeful discrimination will not be assumed. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964). What constitutes discrimination in this troublesome area is a question of fact under the circumstances for which the courts have not formulated wooden rules to be applied inflexibly to every case. To a large extent common sense must play a part in the application of the law to the facts. Swain v. Alabama, 380 U.S. 202, 88 S.Ct. 824, 13 L.Ed.2d 759 (1964). No complaint is made that the laws of this state have brought about discrimination, and no claim can be made to that effect

because the laws of this state prohibit distinction in the selection of juries on the basis of race. La.R.S. 15:172. It is the alleged unconstitutional administration of our laws which is the subject of this contention.

▬ Moreover, the mere fact of inequality in the number selected does not in itself show discrimination. A purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination. Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945). Not only is the record bare of any evidence of intentional discrimination in the selection of the jury, the testimony is affirmatively to the contrary.

Another fact which is significant in this context is the total absence of any evidence of the number of Negroes who were on the general venire from which the grand and petit juries in this case were selected, who, by the drawing, may fortuitously have been eliminated. Considered against the background of the jury commissioner's testimony that Negroes and whites were treated alike in the selection, the inference is strong that a significant number of Negroes were on the general venire. And, since there was only one other jury case within the five years preceding the trial,

no system could be inferred from the lack of Negroes on the jury in one isolated case or by the circumstance of the disproportionate number in the instant case.

Mr. Justice White, as organ of the court in Swain v. Alabama, 380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1964), said: "Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." We learn from this that jurors should be selected as men and not as members of a race. Obviously the number of races and nationalities and the variance in qualifications of our citizens would make it impossible to meet a requirement of proportional representation. See Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1949).

Undoubtedly the system employed did not produce proportional representation in this case, but we cannot say that the facts we have reviewed meet the test of invidious discrimination. Appellant was ably represented by experienced and capable counsel, and if evidence of discrimination existed it would have been brought out.

II.

Appellant contends that prejudicial error occurred when the names comprising the petit jury venire were placed in a hat, and, as names were required for examination of prospective jurors upon their voir dire, the names were drawn from the hat. A like procedure was followed in drawing the

names of prospective jurors from the tales jury list. It is asserted that the names should have been drawn from a box.

Section 182 of Title 15 of the Louisiana Revised Statutes, as amended in 1952, requires the clerk and the commission to draw the names for the petit jury venire from the general venire box, place the slips containing the names drawn for the first week of the court term in an envelope and seal and indorse thereon the words: "List of Jurors No. 1", and the slips for each additional week, when drawn shall be likewise inclosed and sealed and the words: "List of Jurors No. 2", "List of Jurors No. 3", etc., as the case may be, indorsed thereon. These sealed envelopes, with the one containing the list of grand jurors are required by the statute to be placed in a box provided for the purpose labeled "Jury Box," which must be locked and sealed and placed in the custody of the clerk for use at the next session of the court subject to the orders of the district judge.

The procedure with reference to tales jurors is prescribed by Section 186 of Title 15 of the Revised Statutes (1928) and requires that the names of 100 persons qualified to serve be drawn from the general venire box and placed by the commission in a tales jury box, sealed and delivered to the district clerk of the parish who safeguards the box until ordered by the court to produce same. If on the trial of any criminal case, the regular petit jury venire is exhausted, or it appears that it will be exhausted before the selection of a jury has been completed, the court may instruct the clerk to open the tales jury box and draw therefrom the number of tales jurors as in its judgment may be necessary to serve.

Thus it will be noted that neither the provision relating to the petit jury venire, nor the provision relating to the tales jury list prescribes how the prospective jurors, shall be drawn once the clerk has furnished the court with the envelope containing the petit jury venire for the week of court in question or the requested number of tales jurors as the case may be. Drawing from a box is required in Orleans Parish but not elsewhere. We do know, however, that in impaneling the grand jury the law directs that "the sheriff, under the direction of the court, shall draw by lot from the envelope" the names of the grand jurors. La.R.S. 15:184 (1928) [1].

Because the law is silent on how the prospective petit jurors shall be selected

1. Cf. Article 784 of the 1966 Code of Criminal Procedure, which became effective on January 1, 1967, provides: "In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court." This article, though not in effect at the time of the trial, furnishes guidance for the result we have reached. Also, see the Comment under this article.

from the petit jury venire, and tales jury list, we are certain it was proper for the court to supply a fair and reasonable procedure under the circumstances.

Drawing from the hat occurred in the presence of the appellant and under the watchful eye of his counsel and no objection was made to this procedure at the time. In fact, defense counsel acknowledges in his brief that there was no improper conduct on the part of the officials who conducted the drawing. His argument is simply that it was error to permit the drawing from a hat because it could afford a means for the practice of fraud, an argument which does not impress us as relevant to this case.

■ Furthermore, since, in the case of the petit jury venire, appellant had the right to demand that all jurors in this venire be tendered for acceptance or rejection at the trial (La.R.S. 15:344 (1928)), and the entire venire was exhausted, the order or manner in which the prospective petit jurors were drawn for examination on voir dire is unimportant. In the absence of any showing of fraud or prejudice, therefore, drawing the tales jurors from a hat satisfies the test of reasonable discretion accorded a trial judge in procedural matters where the positive law is silent.

We will not set aside this conviction on a contention, based upon speculation, that fraud could be easily practiced by using a hat in the drawing. La.R.S. 15:557 (1928); State v. Clifton, 247 La. 495, 172 So.2d 657 (1965).

### III.

Appellant also complains that the trial court improperly overruled his motion for a new trial based upon newly discovered evidence. On December 5, 1966, the day fixed for sentencing, after unusual delays due in large measure to defense counsel's failure to file his bills of exceptions, a motion for a new trial was filed. A copy of an undated letter was attached to the motion purportedly written by a Negro named Eugene Johnson, in which he declared that he committed the crime for which the defendant Williams was being held. Johnson had been a cell mate in the Iberville Parish jail with the defendant Williams shortly after the rape occurred in early 1964. At the time of the trial of the motion in December 1966, however, Johnson was in the State Penitentiary at Angola and counsel sought a writ of *habeas corpus ad testificandum* to have Johnson brought into court in order that he might be questioned concerning the letter. Both the motion for a new trial and the petition for the writ of *habeas corpus ad testificandum* were denied.

Section 511 of Title 15 of the Revised Statutes of 1950, which was effective at the time of this motion in December 1966, provides:

"To entitle the accused to a new trial on the ground of newly-discovered evidence, it must affirmatively appear that notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial, but has been discovered since; that said evidence is not merely cumulative; that it does not merely corroborate or impeach the credibility or testimony of any witness examined on the trial; that it is so material that it ought to produce a different result than the verdict reached, and that it is admissible. *These allegations must be recited in the motion and be sworn to by the accused.*" (Emphasis added.)

The only allegation of the motion for a new trial which relates to the newly discovered evidence reads as follows:

"Counsel did receive through the mail a letter purportedly from Eugene Johnson, a photostatic copy of which is hereto attached and made a part hereof and as a consequence thereof, it is necessary to have the said Eugene Johnson before this Honorable Court to give testimony as to the truth or falsity of the matters alleged in the letter hereinabove referred to."

The motion for a new trial is not signed or sworn to by the defendant; it is an unsworn motion by counsel. Nowhere therein does it affirmatively appear that, notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial, but has been discovered since, that it does not merely corroborate or impeach the credibility or testimony of any witness examined on the trial, or that it was so material that it ought to produce a different result than the verdict reached, and that it is admissible.

These statutory requirements of specific sworn allegations were not inserted in Section 511 by the legislature as an idle gesture. They are meaningful requirements designed to avoid needless and frivolous efforts to impede the consequence of a guilty verdict. These motions are not favored in the law, State v. Saba, 203 La. 881, 14 So.2d 751 (1943) and should be received with extreme caution, State v. Gray, 192 La. 1081, 190 So. 224 (1939); they should be regarded with suspicion and disfavor. State v. Jones, 112 La. 980, 36 So. 825 (1904).

In State v. Bell, 242 La. 585, 618, 137 So.2d 342, 354 (1962), after stating that the granting or refusing of a motion for a new trial on the grounds of newly discovered evidence is a matter which addresses itself to the sound discretion of the trial judge, we said:

"In the observance of these precepts, it has been many times held by the Court that, where the trial judge finds the newly-discovered evidence to be suspicious and of doubtful credibility, he is justified in refusing a new trial and

his exercise of discretion will not be disturbed on appeal."

■ Failure of defendant to swear to the allegation of the motion; the suspicious circumstance that the letter was not dated; the fact that the envelope was addressed to one "Mrs. Lillie Williams" at 3308 Erato Street in New Orleans, although the salutation of the letter proper was to "Mr. Gill" (presumably defendant's counsel), and the additional fact that the postmark on the envelope showed that it was mailed on November 5, 1965, exactly one year before it was presented to the court as newly discovered evidence, coupled with the overwhelming evidence of defendant's guilt which was well known to the judge, warranted the denial of the motion.

## IV.

Finally, appellant asserts that it was error to admit a confession and the inculpatory statements he was alleged to have made because he was not given the warnings required by the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

Although defense counsel acknowledges that Miranda v. State of Arizona, supra, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) had not been decided when appellant gave his confession and made the inculpatory statements complained of, or when his trial began, it is nevertheless suggested that the rationale of those decisions be applied here. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) decided quite clearly that the rules of the Escobedo and Miranda Cases would not be imposed in trials which began prior to June 22, 1964 and, inasmuch as the trial in the instant case was begun in May 1964, the law of this State which was in effect prior to June 22, 1964 is applicable. The sole test under the law prior to that time was that the confession or inculpatory statement be freely and voluntarily given to be admissible, and, whether they were free and voluntary was a question of fact for the judge to decide. His ruling will not be disturbed on appeal unless palpably erroneous. State v. Johnson, 249 La. 950, 192 So.2d 135 (1966).

■ The testimony bearing upon the voluntary nature of the confession and inculpatory statements has been reviewed by us. Appellant was warned that the confession could be used against him; but he persisted and wrote it. Without reviewing the evidence in detail in this opinion, we are satisfied that the ruling of the trial judge was correct and that the confession and statements were freely and voluntarily given.

For the reasons assigned, the conviction and sentence are affirmed.

HAMLIN, J., absent.