263 So.2d 306

**STATE of Louisiana**

v.

**Matthew WILLIAMS, Jr.**

No. 51892.

June 5, 1972.

John E. Seago, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., J. David McNeill, III, Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice:

Defendant appeals from his conviction of armed robbery, LSA–R.S. 14:64, and his sentence to serve ten years in the Louisiana State Penitentiary.[1] Two bills of exceptions reserved during the course of the

1. The trial court recommended that the accused be sentenced to Dequincy for correction.

proceedings are presented for our determination.

At approximately 10:30 p. m., November 21, 1969, Pak-A-Sak Store #5, located at 1525 North Foster Drive,—corner of North Foster Street and Greenwell Springs Road, Baton Rouge, Louisiana—was the scene of an armed robbery of approximately $116.00. At the time of the robbery, the store manager, Alvin Hanks, was in the back of the store making preparations to close the establishment. Dennis Graham, a clerk, was alone in the store proper; he was the victim of the instant offense. Mrs. J. G. Pino, a customer who had purchased a pound of coffee immediately before the commission of the offense, left the store and entered her automobile, which was parked directly in front of Pak-A-Sak. She saw the defendant who was standing by a newsstand at the time and observed him closely. Mrs. Pino became suspicious after she started her car and placed it in motion; she returned to the front of the store and witnessed the present robbery. She co-operated with the investigating detectives and examined pictures which were in the possession of one of the officers; she did not definitely identify the defendant from the pictures.

Defendant was apprehended by police officers on November 24, 1969; his father had notified the police department that his son, the defendant, had taken a radiator from him. At the time of apprehension, the defendant, accompanied by two boys, was walking along Scenic Highway—outside of Baton Rouge; they were carrying a radiator. The three boys were taken to police headquarters; defendant's companions were released after a determination was made that the radiator had not been stolen. Investigation, however, revealed that a wanted bulletin had been issued for defendant; he was detained and thereafter charged with the commission of the robbery of Pak-A-Sak #5.

## BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved when the trial court refused to suppress the introduction in evidence of a hat allegedly worn by the robber at the time of the commission of the instant offense. The bill was also reserved to the trial court's permitting the offering of testimony concerning an out-of-court identification of the defendant.

Counsel for the defendant contended that the out-of-court identification and the introduction of the hat should be suppressed as fruits of an illegal arrest.

Herein, counsel submits:

"A. The Trial Court erred in failing to find that appellant was a victim of an illegal stopping;

"B.   The Trial Court erred in failing to find that appellant was victim of an illegal arrest; and

"C.   The Trial Court erred in failing to suppress the fruits of said illegal stopping and arrest, such fruits being a brown hat worn by appellant allegedly worn by the robber, and the out-of-court identification of appellant."

In support of the errors averred supra, counsel for the defendant argues:

"In the instant case there was a lack of even the slightest reason for such action, except that the appellant was one of three young blacks walking down the street in broad daylight.

"Furthermore, appellant respectfully submits to this Court that the action of Officer Meyers of taking appellant to the police station did in fact constitute an arrest and that said arrest was in violation of appellant's Fourth Amendment rights and therefore illegal due to the lack of a probable cause for the officer to reasonably believe appellant had committed a crime.

"Officer Meyer's action is an arrest within the scope of Terry vs. Ohio (supra) [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889] in which the United States Supreme Court said that restraint of an individual and denial of an individual's right to walk away brings into play the Fourth Amendment standards of probable cause.   Such action

should not be considered an extension of the investigative process of stopping an individual under Article 215.1 of the Louisiana Code of Criminal Procedure in that no intent to allow the removal of the individual from the on-the-street engagement was meant by the legislature.   29 Louisiana Law Review 523.

"This further detention constitutes an arrest in that an investigation should not be so extended.   U. S. vs. Middleton, 344 F.2d 78 (2nd Cir., 1965)

"The fact that the officer didn't tell appellant he was under arrest has no bearing on whether he was within the Fourth Amendment definition of an arrest.   The test is whether appellant was without freedom to go or not to go.   It is appellant's contention that the reasonable man would have felt detained and without freedom to leave, requiring application of the probable cause standard to be lawful.   Terry vs. Ohio (supra)"

The facts attached to the instant bill disclose, as stated supra, that the police had been notified of the theft of a radiator.   When the police officers saw three boys carrying a radiator along a public highway, they became suspicious of the boys.   We find that the suspicion was justified.   "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion

or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. State of Ohio, 392 U.S. 1, 88 S. Ct. 1868, at page 1883, 20 L.Ed.2d 889 (1968). We also find that the officers actions were justified at their inception and were reasonably related in scope to the circumstances. The officers certainly had a right to interfere with the boys' activities; they had a right to question them under LSA–C.Cr.P. Art. 215.1 which provides:

"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.

"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime.

"C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may consti-

tute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." [2]

Defendant and his two companions, as stated supra, were taken to police headquarters; they accompanied the officers voluntarily; there was no arrest. Information at police headquarters revealed prior suspicious activities of defendant, and it was only after apprehension on the highway and the voluntary trip to police headquarters that defendant was arrested. At the time of arrest, police had probable cause to believe that defendant had committed a crime. Defendant was therefore not the victim of an illegal arrest.

■ Officer Tom Meyers testified that the defendant was wearing a brown hat at the time he apprehended him; Mrs. Pino testified that the boy standing outside of Pak-A-Sak was wearing a brown derby hat. The brown hat was relevant evidence and was therefore properly admitted as such during trial.

■ As stated supra, Mrs. Pino did not definitely identify the defendant from pictures shown her immediately after the robbery; she said that one of the pictures re-

2. "This type of legislation is commonly referred to as a 'stop and frisk law'. Its very purpose is to set forth standards of conduct under which the police may stop and detain one whose actions reasonably should cause suspicion that the person is committing, has committed, or is about to commit an offense. * * *" State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). Cf. State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).

sembled the robber. After defendant's arrest, Mrs. Pino definitely identified the defendant as the robber of Pak-A-Sak #5; this identification took place at a line-up conducted a few days after the commission of the instant robbery. Defendant signed a waiver of counsel prior to the line-up and willingly exposed himself with others for identification. (Defendant would not sign a waiver for a second line-up.)

We find that under the facts and circumstances, the line-up was properly conducted and met the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Testimony concerning the line-up was therefore properly admitted in evidence. Additionally, there was a positive in-court identification of defendant by Mrs. Pino. Defendant suffered no prejudice; his constitutional rights were not violated. Cf. State v. Hills, 259 La. 436, 250 So.2d 394 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Anderson, 261 La. 244, 259 So.2d 310 (1972).

Bill of Exceptions No. 1 is without merit.

## BILL OF EXCEPTIONS NO. 2

Bill of Exceptions No. 2 was reserved when the trial court denied defense counsel's oral motion for a continuance immediately prior to trial, April 19, 1971.

Important dates connected with the instant bill are as follows:

| | |
|---|---|
| November 24, 1969 | Defendant arrested. |
| September 8, 1970 | Motion for continuance granted defense counsel. |
| October 19, 1970 | Trial continued without date on motions of defense counsel and the District Attorney. |
| February 24, 1971 | Substitution of counsel for the defendant; the case was reassigned for trial on April 19, 1971. |
| March 15, 1971 | Motion to Subpoena an Out-Of-State Witness granted defense counsel. |

Prior to the denial of defense counsel's oral motion for a continuance, the following colloquy transpired among the trial court, the District Attorney, and defense counsel:

"MR. McNEILL: Your Honor, on No. 74,110, Matthew Williams, Jr., charged with armed robbery, the State is ready for trial.

"MR. SEAGO: Your Honor, the defense is ready, too.

"THE COURT: All right, the defense is ready for trial?

"MR. SEAGO: Yes, Your Honor.

"MR. McNEILL: Let me—go ahead. You want to argue your motion?

"MR. SEAGO: Your Honor, we previously had discussed this motion to continue. I would like to re-urge the motion to

continue, based upon the grounds of giving the defense more time to secure the attendance of an out of state witness who has been declared to be a material witness in this trial, since he was the victim of the robbery. The victim is now living in New Jersey and it takes approximately 30 days to refile our motion here and get it sent up to New Jersey and have a hearing in New Jersey, for them to subpoena Mr. Graham, and we would like at this time to urge that the motion to continue this trial be granted.[3]

"MR. McNEILL: The State objects to this motion for continuance, because in September we came to Court ready to try the case, the witness he refers to was present in Court, ready to testify, and the defense at that time moved for and was granted a continuance, the case was reas-

signed by consent of counsel—not Mr. Seago, but the lawyer representing him at the time, this is about the third lawyer he's had—and as a matter of convenience the case was assigned for trial on a Friday by Judge Covington, in order to enable them to get this witness down here from New Jersey. The witness didn't want to attend or couldn't attend or for one reason or another did not attend and the case was again reassigned and—let's see, when did we reassign that for—all right, in September of '70, it was reassigned for December 4, on December 4, it was reassigned for February 24, on February 24 another motion for continuance was granted. This is the fourth time this case has come up for —ready for trial, the State has been ready on all occasions, and the State is still ready for trial, and we respectfully oppose the defense motion to continue.[4]

---

3. The Motion of March 15, 1971 to Subpoena an Out-Of-State Witness, accompanied by the necessary affidavits, certificates, and order, recited in part:

"At the present time, Dennis Graham, the victim of the armed robbery committed on November 21, 1969, with which defendant allegedly committed is presently residing in the State of New York, and works at 1301 Broadway, Brooklyn, New York, 11221, and resides at 1712 Brockton Avenue, Asbury Park, New Jersey, 07753.

"The testimony of Dennis Graham is imperative to insure the defendant herein a fair and impartial trial according to the due process requirements of the Constitution of the State of Louisiana and the United States.

"If called to testify, Dennis Graham, 1301 Broadway, Brooklyn, New York,

11221 will testify that the defendant, Matthew Williams, Jr., who is presently being held for the crime of armed robbery on his person is not the individual who robbed him on the 21st of November, 1969."

4. The Order issued by Judge John S. Covington on March 15, 1971 provided: "The Honorable Perry M. Johnson, Clerk of Court, Parish of East Baton Rouge, State of Louisiana issue a check in advance, made payable to the said Dennis Graham in the sum of Two Hundred Ninety-five and No/100 ($295.00) Dollars for travel expenses of the said witness which expenses are itemized as follows:

"a) 2,800 miles at 10¢ per mile $280.00
"b) $5.00 per day for three days 15.00
     "TOTAL      $295.00"

"THE COURT: All right, show the motion to continue is denied.

"MR. SEAGO: Your Honor, we would like at this time to reserve a bill of exception to the Court's ruling, putting therein the motion to continue, the Court's ruling and the argument of counsel. Thank you.

"THE COURT: Also include the argument of the prosecutor.

"MR. SEAGO: Yes, sir."

Herein, counsel for the defendant argues that:

"The Motion for Continuance *satisfied all the requirements* of Article 709 of the Louisiana Code of Criminal Procedure prior to the trial as set out supra. The *first of these being the materiality of the testimony and the necessity for the presence of said witness.* It was set out that the witness, Dennis Graham, being an eye witness to the alleged crime and able to testify that defendant-appellant was not the person who robbed him on the 21st day of November, 1969, is unquestionably a material witness.

"The *second of these requirements being that there must be a showing that the witness will be available.* It was shown that appellant knew the whereabouts of the witness, those whereabouts being New Jersey, and that the laws of New Jersey will enforce out-of-state subpoenas if the witness would not come voluntarily, as well as New York where the witness worked.

"The *last of these requirements being that there must be a showing of due diligence* on the part of party requesting the continuance to get the witness located and to the trial before the request is filed. The attorney for the defendant-appellant did in fact use due diligence by serving the witness in New York, where he worked, and attempted to subpoena him there, however, prior to the time the New York courts enforced the out-of-state subpoena, the witness was no longer employed in New York. Therefore, time was needed to reissue the subpoena in the State of New Jersey.

"The prosecuting attorney argued befor the Trial Court that prior continuances granted due to the changing of appellant's counsels and a prior continuance for an unsuccessful out-of-state subpoena due to witness moving to another state should be reason enough to deny the Motion for Continuance. * * * The Trial Court accepted this reasoning and denied the continuance. * * *

"However, this Court in State vs. Hudson [253 La. 992, 221 So.2d 484] (supra) held that where the missing out-of-state witness was an eye witness as in the instant case, a second continuance was not an abuse of the Courts discretion. In State vs. Blankenship, 231 La. 993, 93 So. 2d 533 (1957), this Court upheld the trial courts discretion in granting a continuance to the prosecutor since the witness was out

of state; and the prosecutor in that case didn't even know the whereabouts of the missing witness.

"Therefore, appellant respectfully submits, in accordance with the above cited cases, that the Trial Court denied him his Sixth Amendment right of confrontation and that said denial was an obvious abuse of the Trial Court's discretion."

In brief, the State submits the following:

"The bill deals with the refusal of the district judge to further continue the case, thereby requiring the defendant-appellant to go to trial without the presence of Dennis Graham, the store clerk who was robbed.

"The State concedes, as it must, that trial without a witness is a serious matter. Further, if the judge had exercised his discretion in favor of the continuance, this would have been his prerogative.

"However, it is submitted that, as admitted on page 14 of his brief, that the defendant-appellant knew of the whereabouts of the witness. It would seem then, that defendant-appellant had ample time in which to compel the attendance of this witness. Accordingly it is urged that the denial of this last continuance was not 'an obvious abuse' of the trial court's discretion, as contended by defendant-appellant.

"Such denial was an exercise of the trial court's discretion, and the State contends

that the Court below was eminently fair in the matter of continuances throughout the entire conduct of the case, on both sides. Accordingly, there was no abuse of discretion and the ruling of the Court below should be upheld."

LSA–C.Cr.P. Art. 707 provides that an application for a continuance *shall be by written motion alleging specifically the grounds upon which it is based, and when made by a defendant, must be verified by his or his counsel's affidavit.* Herein, a written motion for a continuance was not filed on the day of trial.

There was no compliance with Art. 707.

LSA–C.Cr.P. Art. 709 provides:

"A motion for a continuance based upon the absence of a witness must state:

"(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;

"(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and

"(3) Facts showing due diligence used in an effort to procure attendance of the witness."

There was no compliance with Art. 709.

A discussion of the jurisprudence on abuse of discretion of the trial judge follows.

■ ▬ "It is legion that the granting or refusal of a continuance rests in the sound discretion of the trial judge, and his ruling will not be disturbed except where his discretion has been arbitrarily or unreasonably abused. LSA–R.S. 15:320 (now Art. 712 of the new Code of Criminal Procedure); State v. Thomas, 214 La. 499, 38 So.2d 149; State v. Jones, 249 La. 324, 186 So.2d 608; State v. Ganey, 246 La. 986, 169 So.2d 73." State v. Skinner, 251 La. 300, 204 So.2d 370, 388 (1967). It is also legion in our jurisprudence that a decision of a trial judge as to whether to grant a continuance so that a witness to a crime may be located will not be interfered with in the absence of palpable abuse of his discretion. State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).

It is not known what Dennis Graham would have testified to had he been present at trial or had he given a deposition; we are only presented with averments. We do not find, however, that defendant suffered prejudice to the extent of reversible error by the absence of Graham's testimony. A month elapsed between the date of trial and the time the motion to subpoena Graham was granted. Also as shown supra, defendant was granted a number of continuances prior to the denial of the oral motion involved in this bill of exceptions.

The record does not show with definite certainty that the testimony of Graham could have been secured had a continuance

been granted. Likewise, the record does not show that had a more concerted and strenuous effort been exerted, the timely presence of Graham might not have been secured. The record does contain a transcript of the testimony taken during trial; we have read this testimony out of an abundance of caution and find that testimony was offered by the State with respect to defendant's alleged guilt. The defense offered the testimony of several witnesses; they testified with respect to an alibi. The prosecution was tried to a jury, and defense counsel in his opening statement said: "The State says that they have a witness who can testify that this particular man committed this crime. However, the State has not produced the victim of the robbery, the man who was actually robbed, the man with the gun stuck in his back, the man who handed the money to the person, whoever committed the crime. The State has not produced him, nor have they, to my knowledge, ever tried to bring him. Now, the defense will introduce into the record—and it's in the record now—that they have actually filed a motion to secure the attendance of an out of state witness. We have tried to do this, but unfortunately we could not get him down here, and we are still trying to get him down here, and it seems that if the State really wanted to have all the facts before you, that they would have the actual victim of the robbery." The jury was aware of

Graham's absence, and it nevertheless found defendant guilty upon the evidence adduced, exercising its prerogative of determining guilt or innocence.

■ Under the facts and circumstances presented supra, we find that the defendant did not comply with the articles of the Code of Criminal Procedure, supra, relating to continuance. We do not find that the trial judge palpably abused his discretion in denying defense counsel's oral motion for a continuance on the day of trial; we do not find that he acted unreasonably or arbitrarily. Defendant was neither prejudiced nor deprived of his constitutional rights. Cf. State v. Burch, 261 La. 3, 258 So.2d 851 (1972); State v. Devenow, 253 La. 796, 220 So.2d 78 (1969); State v. Jackson, 250 La. 1100, 202 So.2d 264 (1967); State v. Bland, 253 La. 185, 217 So.2d 195 (1969); State v. Lewis, 255 La. 623, 232 So.2d 294 (1970); State v. Thompson, 256 La. 1019, 240 So.2d 899 (1970).

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J., concurs.

DIXON, J., dissents.

TATE, Justice (concurring).

The writer concurs with some reservation in our affirmance. I have substantial

doubt that traditional American notions of fairness were served by the denial of a continuance under the present circumstances.

The defendant is charged with the armed robbery of Dennis Graham. On February 24, 1971, present counsel was appointed to defend the accused. The trial was fixed for April 19, 1971.

On learning that Graham had moved to New Jersey, counsel telephoned him and found that Graham said he could not identify his robber. (At oral argument before us, the district attorney admitted this witness's testimony was at least shaky as to identification.) Thereupon, on March 15th, counsel obtained an order to secure attendance of the out of state witness, Graham.

Service out of state on Graham could not be made, for reasons here immaterial. A week or so before the trial date, counsel informs us without contradiction, he so informed the district attorney. On the trial date, he attempted to secure an extension. The district attorney objected to the continuance, and the trial judge refused it.

The situation, then, is this: The accused is on trial for the robbery of Dennis Graham. The state concedes that this essential witness's testimony tends to be favorable to the accused, in that he could not identify him. After his appointment, the defendant's new counsel makes diligent but

unsuccessful effort to bring the testimony of this witness before the court, although he had moved out of state. When he seeks a continuance to do so, previous subpoena efforts having failed, the district attorney objects.

The refusal of the district attorney to facilitate efforts to let the trial jury have the benefit of this essential testimony, favorable to the accused, comes perilously close to a denial of fundamental due process. Cf., Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

I would unhesitatingly find an abuse of the trial court's discretion in denying a continuance (and possibly a denial of due process by so doing), if it were not for a circumstance to which I shall advert shortly.

Nevertheless, even aside from these considerations, I have some reservations whether, in the face of an unsuccessful good faith effort of the defendant to secure attendance of the victim of the crime, the district attorney lives up to his function by opposing a continuance for such purpose: As the American Bar Association Standards of Criminal Justice state, The Prosecution Function, Section 1.1(c):

"The duty of the prosecutor is to seek justice, not merely to convict."

Despite all these reservations, I concur, at least for the time being. The narrow issue before us may be considered, did this trial judge abuse his discretion under all of the circumstances before him?

Although present counsel cannot be charged with bad faith or dilatory tactics, probably the trial judge was influenced to deny the continuance because, through prior counsel, the accused had obtained three continuances (one on his own motion, two by joint motion). At the first trial date of September 8, 1970, the victim Graham is stated by the district attorney (in argument at the trial court against the continuance) to have been present and ready to be a witness at the trial. Although present counsel does not share any responsibility, nevertheless the net effect is that the complaining witness Graham is not available as a witness at least partially because of repeated continuances requested by the accused through prior counsel.

With some reservations, therefore, I concur that the trial court may not have abused its discretion in denying this additional continuance. I do so, however, with the feeling that the interests of justice would better have been served by granting it and by letting the trial jury have the benefit of the testimony of the victim of the robbery, a most essential identification

witness. The whole problem would not have arisen had not earlier continuances been granted, when all witnesses were present in the state, and when their memories of the robbery of November 21, 1969 were considerably fresher.

SANDERS, Justice (concurring).

I fully concur in affirming the conviction, but add the following in elaboration of my reasons:

Before Police Officer Meyers picked up the defendant and took him to Police Headquarters, a "wanted" bulletin had gone out for the defendant's arrest in connection with the robbery. A witness had tentatively identified him from a photograph as the robber. At Headquarters, Officer Meyers learned of the bulletin and surrendered the defendant to the detectives investigating the robbery. The seizure of the brown hat and the lineup identification occurred thereafter.

Assuming that the pickup whereby defendant was brought to Police Headquarters was an illegal arrest, as defendant contends, that custodial action passed out of the picture after he was arrested at Headquarters under the pickup bulletin. The lineup and seizure were accomplished by virtue of the headquarters arrest, not by "exploitation" of the challenged arrest. Hence, the lineup identification and demonstrative evidence are untainted. Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963); Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), handed down May 22, 1972.

For the reasons assigned, I concur.