400 So.2d 580 (1981)
STATE of Louisiana
v.
Ruth Lee MEREDITH.
No. 67721.
Supreme Court of Louisiana.
June 22, 1981.
*582 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
Leo Boothe, Smith, Taliaferro, Seibert, Boothe & Purvis, Jonesville, for defendant-appellant.
CUTRER, Justice.[*]
Defendant, Ruth Lee Meredith, was charged by bill of indictment, on September 11, 1979, with simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2. Defendant was tried before a jury of twelve which found her guilty of attempted simple burglary of an inhabited dwelling, La.R.S. 14:27, 14:62.2, on December 8, 1979. After a hearing, the defendant was sentenced on March 5, 1980, to three years at hard labor. She now appeals her conviction and sentence on the basis of eleven[1] assignments of error.
By way of background, the evidence reflects the following:
Ms. Allene Thompson testified that on October 1, 1978, she returned to her residence in Jonesville, Louisiana, to find that it had been broken into. Much of her property had been taken, including guns, crystal, money and silver, and the house appeared to have been ransacked. She immediately went to the home of the defendant, a neighbor, and informed her of the break-in. The two women and the defendant's husband returned to the Thompson residence.
Ms. Thompson testified that initially she did not suspect the defendant, but she later recalled that the defendant appeared hesitant to become involved and at times acted as though she wanted to impede reporting the incident to the police and that she tampered with evidence.
Approximately nine months after the burglary, the estranged wife of the defendant's son informed the police that she had helped move some of the property, later identified as that of the victim's, from the defendant's residence. She also delivered to the police a piece of crystal belonging to the victim that she said the defendant had given her. When the police executed a search warrant a month later, they could find none of the victim's property in the defendant's residence. The State, however, introduced testimony that the defendant had made an inculpatory statement to the Catahoula Parish Sheriff, admitting involvement in the burglary and knowledge of the whereabouts of the stolen goods.
The defendant took the stand on her own behalf and denied any knowledge of the burglary or the stolen property. The defendant also admitted that she was an alcoholic and that she was presently a resident *583 in an alcohol abuse program. A previous witness, Dr. Joe Hayes, testified that the defendant was in fact an extreme alcoholic, subject to blackout periods.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment the defendant asserts that the trial court erred in denying her motion for a continuance.
On December 3, 1979, when the defendant's case was called for trial on a motion to suppress, the defense counsel moved for a continuance. In his written motion, the defense counsel urged that a continuance be granted because the defendant was mentally and physically incapacitated, confined to a hospital and that trial would seriously impair her treatment and threaten her health. The court held a hearing on the motion. The hearing began with the testimony of the defendant's family physician, Dr. W. C. Coney, who stated that he had not seen the defendant for two months but that she had had on-going emotional problems and difficulty in dealing with stress. The witness also stated that he believed that the source of her trouble was related to alcohol abuse. A social case worker, David Cartwright, testified that the defendant was involved in a six week voluntary alcoholic treatment program. This witness stated that if the defendant was required to be in court, it would interrupt her treatment.
Dr. Joe Hayes, an expert in psychiatry who had interviewed the defendant the day before, testified that in his opinion the defendant had no significant psychiatric illness other than that which was alcohol related. He testified, however, that if the defendant was required to be in court, her treatment would be interrupted and she would be provided with an opportunity to possibly return to alcohol. The witness was unable to say whether trial as scheduled would seriously endanger her health but felt that she might be somewhat better prepared for trial in six months or a year. Yet, Dr. Hayes stated that the defendant did understand the proceedings presently against her, knew her rights and could assist counsel in her defense. The trial judge then denied the motion for a continuance but noted that he would carefully monitor the effects of trial on the defendant by preventing prolonged examination of her, providing frequent recesses and by allowing her continual supervision to aid in keeping her away from alcohol. The defendant assigns this ruling as error.
The granting or refusal of a continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear abuse of discretion.
In the case of State v. Karno, 342 So.2d 219, 221 (La.1977), this court observed as follows:

"Article 712 of the Louisiana Code of Criminal Procedure provides that `[a] motion for continuance, if timely filed, may be granted, in the discretion of the trial court, in any case if there is good ground therefor.' (emphasis added) This Court has consistently recognized that the granting or refusing of a motion for continuance rests in the sound discretion of the trial judge and that his ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Sosa, 328 So.2d 889 (La.1976); State v. Carruth, 311 So.2d 866 (La.1975); State v. Brewer, 301 So.2d 630 (La.1974); State v. Williams, 262 La. 317, 263 So.2d 306 (1972). Furthermore, this Court has recognized that whether or not the trial court has exercised its discretion unreasonably depends primarily on the facts and circumstances of the particular case. State v. Winston, 327 So.2d 380 (La.1976). These general principles apply with equal force when the grounds on which the continuance is sought is the physical condition of the accused. See State v. Brown, 322 So.2d 211 (La.1976); State v. Navarre, 289 So.2d 101 (La.1974); State v. Roberts, 278 So.2d 56 (La.1973); State v. Forsyth, 229 La. 690, 86 So.2d 536 (1956).

"Other jurisdictions also recognize that the trial court has broad discretion in passing upon motions for continuance based on the physical condition of the *584 accused, both in determining whether the defendant is in fact suffering from ill health or disability and in weighing the possible adverse consequences of his being brought to trial. See e. g. Bernstein v. Travia, 495 F.2d 1180 (2d Cir. 1974); United States v. Doran, 328 F.Supp. 1261 (S.D.N.Y.1971); Adams v. State, 47 Ala. App. 506, 257 So.2d 366 (1971), cert. denied 288 Ala. 731, 257 So.2d 368 (1972); People v. Martinez, 264 Cal.App.2d 906, 70 Cal.Rptr. 918 (1968); Compton v. State, 500 S.W.2d 131 (Tex.Cr.App.1973).

However, it is well established that if an accused is in fact suffering from a physical condition such that standing trial would seriously endanger his health, or if his illness or disability substantially impairs effective participation in his defense, he is entitled to a continuance. See e. g. United States v. Knohl, 379 F.2d 427 (2d Cir.), cert. denied 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); United States v. Doran, supra; Eastland v. State, 223 Miss. 195, 78 So.2d 127 (1955)."

The principles, to be applied in deciding a motion for a continuance, based upon a defendant's physical condition, were also set out in Karno.[2]
In the instant case, though it was established that the defendant was an alcoholic and had been admitted into a substance abuse treatment program, the trial judge clearly indicated that measures would be taken to safeguard her health at trial and to watch her closely for the possibility *585 of a worsening in her condition. Additionally, there was no conclusive testimony that the accused would, in fact, be better able to stand trial at a later date. Further, there was positive testimony that she could effectively exercise her constitutional rights and assist counsel. Accordingly, the trial judge's ruling, denying the motion for a continuance, was not an abuse of discretion.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
By this assignment the defendant urges that the trial court erred in denying her motion to suppress the confession made to Sheriff Jackson while she was mentally incapacitated.
Defendant filed a motion to suppress for use as evidence an inculpatory statement allegedly made by her to Catahoula Parish Sheriff Thomas Jackson. A hearing was held on defendant's motion of December 4, 1979. At the hearing Sheriff Jackson testified that on September 16, 1979, at approximately 7:30 P.M., the defendant called his residence in Sicily Island. Defendant lived in Jonesville. Without being questioned by the sheriff, defendant told him that she was sorry that her relatives were voting against him in his bid for re-election. She told the sheriff that her family was wrong, that the trouble was her fault as she `did it.' She stated that she realized he was only doing his job. The sheriff stated that defendant also told him that she was worried about the victim suing her for the value of the items that were not returned.
Sheriff Jackson stated that the defendant had been previously arrested, advised of her rights and released on bail prior to this call. He testified that he told the defendant that her attorney had advised her to remain silent. She insisted, however, in talking to him. The sheriff said that no promises or enticements had been made to the defendant. He stated that the defendant was crying and sounded upset but he could not tell that she was intoxicated.
The State then called Catahoula Parish Sheriff's Officer, Paul Blunschi, who testified that when he arrested the defendant on July 23, 1979, he advised her of her Miranda rights. Also called was Officer Kirby King who stated that he had booked the defendant and, when doing so, had again advised her of her constitutional rights.
The defendant called psychiatrist, Dr. Joe Hayes, who repeated his earlier testimony given on the motion for a continuance that the defendant was an alcoholic and also that if she had started drinking before the telephone call, she would likely have lost control.
The next witness for the defendant was her husband who stated that he recalled that she was intoxicated when the call was made. The trial court then denied the motion to suppress, finding that, even if the defendant was intoxicated, the intoxication was not so severe as to prevent the statement from being voluntary. The defendant now assigns this ruling as error. Defendant contends that the confession was not free and voluntary due to her intoxicated condition at the time the confession was made.
Before a confession can be introduced into evidence, the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451.
Where a free and voluntary nature of a confession is challenged on the ground that defendant was mentally incompetent due to intoxication at the time of the confession, such confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render her unconscious of the consequences of what she is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. State v. Rankin, 357 So.2d 803 (La.1978).
*586 In the instant case, the record reveals that the defendant was at home, on bail, when she telephoned Sheriff Jackson and made the statement. According to Sheriff Jackson's uncontradicted testimony, he did not question her and she freely volunteered her statements. He told defendant that she should talk to her attorney and not to him. She insisted, however, on talking to the sheriff. From this evidence it is reasonable to conclude that the statement was not the product of a custodial interrogation but was spontaneous and unsolicited. Although Dr. Hayes testified that he believed the defendant was an alcoholic and her husband testified that she was drinking before the call, the trial judge's decision, after listening to the witnesses and evaluating their credibility, that, if intoxication existed, such was insufficient to vitiate the voluntary nature of the statement, is supported by the evidence. This conclusion is supported by the fact that defendant personally placed the long distance call from her home to the home of Sheriff Jackson and was coherent in her conversation. Also, the credibility of the defendant's husband, the only witness to testify in regard to her intoxication, was called into question when he stated that no one was with the defendant when she placed the call. This assertion directly contradicted the earlier testimony of Sheriff Jackson who said he heard the defendant repeatedly speaking to another person when she called him.
The evidence fully supports the trial court's conclusion that defendant's intoxication, if it did exist, was not of such a degree as to negate defendant's comprehension and consciousness of the consequences of what she was saying.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 11
By this assignment the defendant contends that the trial court erred in imposing an excessive sentence. Defendant was sentenced on March 5, 1980, to three years at hard labor; a maximum of six years and a minimum of six months was possible for a violation of La.R.S. 14:62.2 and 14:27.
Defendant asserts that her allegedly excessive sentence is a violation of La. Const. Art. I § 20 which prohibits the imposition of excessive punishment. This court has held that imposition of a sentence, although within statutory limits, may in fact violate a defendant's constitutional rights against excessive punishment, which rights are enforceable by this court on appellate review. State v. Spencer, 374 So.2d 1195 (La.1979). However, the trial judge has wide discretion in the imposition of sentences, given compliance with La.C.Cr.P. art. 894.1, and sentences imposed will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Molinario, 383 So.2d 345 (La.1980); State v. Spencer, supra; State v. Gist, 369 So.2d 1339 (La.1979).
The trial judge's reasons for imposing sentence, as required by La.C.Cr.P. art. 894.1, are an essential aid to this court when reviewing a sentence for excessiveness and abuse of discretion. State v. Spencer, supra. Article 894.1 sets forth three factors which justify a sentence of incarceration and eleven factors which, although not excusing the defendant's conduct, tend to lessen his culpability. The trial judge is required to state for the record both the considerations he had taken into account and the factual basis for the imposition of sentence.
In the instant case, after the trial judge pronounced sentence, he proceeded to state the factual basis for his decision and indicated how he had taken the sentencing guidelines of art. 894.1 into consideration. In a very thorough manner, the trial judge considered both the aggravating factors (finding the defendant in need of a custodial environment due to her problem with alcohol and a less sentence would deprecate the seriousness of the offense) and each of the mitigating factors. At almost each mitigating factor, the trial judge explained the factual considerations he had taken into account and whether the factors were applicable before imposing sentence. The trial judge gave special attention to the facts *587 that the defendant was fifty years of age, an admitted alcoholic and had no previous record. The trial judge, in reply to defense counsel's suggestion that the sentence was excessive, stated that the crime, involving the violation of a private home, was very serious and involved important problems of respect for public order and the rights of others. After reviewing the trial judge's reasons for imposing sentence contained in the record, we are unable to say the sentence is excessive. Clearly, the trial judge did not abuse his discretion.
This assignment of error is without merit.
For the reasons assigned, the defendant's conviction and sentence is affirmed.
AFFIRMED.
WILLIAM V. REDMANN, J. Pro Tem., dissents with reasons.
WILLIAM V. REDMANN, Justice Pro Tem., dissenting.
This Court is unconstitutionally constituted and an accused is denied due process of law by his or her case's being referred to it instead of the Louisiana Supreme Court as constituted by La.Const. Art. 5 §§ 1, 3 and 4, to which this Court should order this case referred.
See the writer's dissent, State v. Petterway, La.1981, 403 So.2d 1157, 1161.
NOTES
[*] Judges Cecil C. Cutrer, Court of Appeal, Third Circuit; William V. Redmann and Thomas J. Kliebert, Court of Appeal, Third Circuit; participated in this decision as Associate Justices Ad Hoc; joined by Associate Justices Pascal F. Calogero, Jr.; James L. Dennis; Fred A. Blanche, Jr. and Harry T. Lemmon.
[1] Assignment of error Number 7 was not briefed or argued by the defendant; thus, it is considered abandoned on appeal. State v. Kenner, 384 So.2d 413 (La.1980).

Assignments of error Numbers 3, 4, 5, 6, 8, 9 and 10 present no reversible error, nor do they involve legal issues not governed by clearly applicable legal principles. Their disposition is noted in an appendix attached to this opinion, which remains a part of the record of this case, but will not be published with this opinion.
[2] These principles (with citations deleted for brevity) are as follows:

"(1) Medical Reports and JudgmentsThe threshold questions are whether the accused is indeed suffering from the disability complained of and whether there is a high risk that forcing the defendant to stand trial would seriously endanger his health and/or prevent him from effectively participating in his defense. Where possible and deemed necessary, appointment of independent medical experts is suggested;
"(2) Evidence of Defendant's Activities During the Period of IllnessThis factor involves consideration of the accused's lifestyle and activities during the period in question.... Appropriate weight might be given to personal observations by the trial judge and to the extent of the defendant's participation in earlier pre-trial motions, hearings, etc.
"(3) Possible Availability of Measures to Minimize the Risk to Defendant's Health in Subjecting Him to TrialA continuance may not be required when certain steps can be taken to effectively protect the accused during the course of the trial, including shortening the trial day, providing for recesses as necessary, and making available emergency medical aid.... The defendant, of course, has a corresponding responsibility to guard his own health during this period.... In weighing the possibility of minimizing medical risk, the courts should take into account the length of time the trial is expected to last.... A caveat is noted, however, in that the ability to minimize the risks involved does not per se indicate that the motion for a continuance should be denied....
"(4) Whether the Accused Will Be Better Able to Stand Trial at a Later DatePostponement of trial is often the appropriate, obvious and fair decision for both the defendant and the public when the disability is temporary and/or curable. In cases where the accused's condition is deteriorating, however, a determination that the accused is presently unable to stand trial may amount to a decision that he may never be tried. While this should never be a decisive factor, see Eastland v. State, supra, the degree of `acceptable' risk may vary depending upon whether the request for the continuance is merely for delay to allow for improving health or for an indefinite continuance based on the existence of a condition likely to become progressively worse....
"(5) The Degree of Injury to the Public Interest Deemed to Result from Delay or Total Preclusion of a TrialIt is an undeniable fact that some criminal cases are more `important' in relative terms than others and, therefore, some weighing of this variable may be appropriate. It should never, however, be determinative in and of itself and should be considered with caution....
"(6) The Effect of Defendant's Physical Condition on the Exercise of His Constitutional RightsThe trial court should carefully consider whether the accused's present physical condition is such that it may substantially impair his constitutional right to effective assistance of counsel, ...; his right to be present in the courtroom at every stage of his trial, ...; and his right to confront witnesses and testify on his own behalf, .... If the defendant voluntarily has informed the court he will not testify during the trial, the court should take this into consideration also....
"(7) The Presumption of InnocenceArticle 1, section 16 of the Louisiana Constitution of 1974 provides that `[e]very person charged with a crime is presumed innocent until proven guilty...' Courts must be particularly mindful of this fundamental right when weighing the risk to defendant's health or life in bringing his case to trial."