305 So.2d 465 (1974)
STATE of Louisiana
v.
Henry R. JEFFERSON.
No. 55041.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
*466 Calvin L. Perilloux, La Peace, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Melvin P. Barre, Dist. Atty., Norman J. Pitre, Asst. Dist. Atty., Abbott J. Reeves, Sp. Asst. Dist. Atty., Research and Appeals, for plaintiff-appellee.
SUMMERS, Justice.
Appellant Henry R. Jefferson was charged by bill of information with six counts of possession and distribution of LSD, barbiturates and marijuana on June 16, 1972. He was found guilty on all counts and received a sentence of eight years for distribution of barbiturates. Lesser sentences on the other counts were imposed to run concurrently.
On this appeal two bills of exceptions are relied upon for reversal of the conviction and sentence.

Bill 1
The State's first witness was Herman Parrish, Director of the Southeast Louisiana Criminalistic Laboratory, an expert in quantitive and qualitative forensic chemistry. Defense counsel stipulated the witness' qualifications as an expert in his field. It was also stipulated that the drugs and narcotics in the envelope examined by Parrish were LSD, barbiturates and marijuana.
Parrish then testified to the chain of custody of the substances he analyzed. On September 27, 1972 Burton Ory, a narcotic agent, brought the substances to him in an envelope. The envelope was sealed with wax which was still intact at the time of the trial. When he received the envelope he marked it with the code number 014-72 and signed a receipt for the material on which he again wrote the code number previously assigned to the envelope.
The envelope was then placed in the evidence vault, which was locked. He had the only key. Later, he removed the envelope from the vault and opened it by cutting at the bottom. Pills in a container and rolled cigarettes were enclosed. Analysis resulted in a finding that the substances were LSD, barbiturates and marijuana. These were returned to the envelope, sealed and again placed in the vault until removed by Parrish and brought to court. The envelope was in his possession while he testified.
In cross-examining Parrish, defense counsel sought to ascertain whether an effort had been made to lift fingerprints from the container of substances in the envelope. The witness said no such effort was made.
After Parrish left the witness stand, defense counsel moved in open court for a mistrial. In his oral motion he alleged that the witness Parrish violated the order of sequestration of witnesses when he left the courtroom after testifying. He asserted that Parrish went into a room where two of the State's witnesses were sequestered and "communicated with them relevant to the trial, to the questioning and the examination and cross-examination of him on the stand." The witnesses involved were not named or otherwise identified; *467 nor does the record intimate in the slightest that the State's attorneys had any foreknowledge of Parrish's actions.
At this time the Assistant District Attorney moved that the witness be returned to the stand to testify to the substance of his communication with the other State's witnesses. He also stated that the trial judge had discussed the matter with the witness Parrish in chambers, at which time Parrish admitted that he had gone into the room with the other State's witnesses. However, according to the Assistant District Attorney, Parrish only told them that they would be questioned on the chain of custody of the evidence in question. Nothing else was said.
Particularly nothing was said concerning the fact that no fingerprints were lifted from the substances in the envelopes. This, apparently, was the question of concern to the defense. In his brief, defense counsel represented that he had planned a series of questions to be directed to each of the subsequent state witnesses relative to the absence of fingerprints as evidence in the State's case. Counsel assumed, therefore, that since the question of fingerprints was the thrust of his cross-examination of Parrish, it was reasonable to assume that when Parrish spoke to the sequestered witnesses it was to transmit information on the fingerprint question so that they would be prepared with answers "common to all". In effect, this would frustrate the defense effort to establish the absence of fingerprints in the State's case. Apparently the defense is not concerned with any possible prejudice which may have resulted from the very limited reference to chain of custody made by Parrish to the other State witnesses.
After argument, the trial judge suggested that, at the proper time, defense counsel should cross-examine the State's witnesses to whom Parrish talked to ascertain whether they were influenced by his communication to them.
Neither the suggestion of the Assistant District Attorney to examine Parrish, nor the trial judge's suggestion to question the State's witnesses, was availed of by the defense.
The trial judge denied the motion for a mistrial, and this bill of exceptions was reserved.
Since Parrish, the State's principal witness, conceded that no fingerprints were lifted from the substances examined, defense counsel had established his contention that the State had no fingerprints to support its case in a most persuasive mannerby the State's own witness. It is difficult to understand the argument that prejudice to the defendant resulted from Parrish's alleged communication with other State's witnesses on the subject of fingerprints, when the point was, in effect, conceded by the State's witness in the presence of the jury.
Notwithstanding that the violation of the order of sequestration by a witness, La. Code Crim.Proc. art. 764, is not designated as a ground for a mistrial, La.Code Crim. Proc. arts. 770, 771, 775, defense counsel argues that such a violation denies the defendant due process and equal protection of the laws guaranteed by the Fifth Amendment to the United States Constitution.
After full consideration of the issue presented, we will not overturn this trial and conviction on this technical violation of the order of sequestration. No fault on the part of the State or its counsel who called Parrish as a witness has been shown. Significantly, defense counsel declined the opportunity to question Parrish and the two witnesses alleged to have been influenced to corroborate his contention. At no time was the jury apprised of this alleged exertion of undue influence upon the State's witnesses, and no prejudice to the defense has been demonstrated. Only speculation and conjecture are relied upon. The bill has no merit.

Bill 2
This bill was reserved to the denial of a defense motion for a new trial. La.Code Crim.Proc. arts. 851-858.
*468 The motion alleges that, since the verdict, defendant discovered new evidence important to the case which he could not, with due diligence, have obtained before. The motion continues:
"After the trial, upon conferring with several members of the jury venire, including one selected as a juror in this case, it was learned by counsel for the defendant that the entire jury venire was present in the courtroom on December 18, 1973, before the time of the trial of the defendant herein, when one Wayne Augilliard, pleaded guilty to charges stemming from the same alleged incident which led to the charges and trial of the defendant herein."
It is the defense contention that the jury, not being informed of the facts relating to the bargain which prompted Augilliard's guilty plea, would necessarily associate a confession of guilt by one felon with guilt of his accomplice. Implicit in this contention is the conclusion that such an occurrence would taint the jury, depriving defendant of the presumption of innocence and the guarantee to a trial by a fair and impartial jury. The motion further alleged that "During the trial, the prosecutor for the state and the witnesses for the state on several occasions identified Wayne Augilliard as an accomplice of the defendant."
In his per curiam the trial judge finds that the members of the jury venire were in the courtroom at the time of Augilliard's guilty plea. However, there is no evidence to support the allegation that counsel conferred with several members of the jury venire, including one who served in this case. There is no evidence that the jurymen heard or understood Augilliard's plea. In fact, not one iota of evidence was introduced to support any of the allegations of the motion.
In all fairness, the Assistant District Attorney argued that if defense counsel had any evidence other than the fact that Augilliard's guilty plea was made in the courtroom, it should be presented. He pointed out, moreover, that improper influence on the jury could not be established by unsupported allegations. Despite these suggestions, the defense brought no evidence to support the motion.
Without evidence that the prospective jurors heard and understood Augilliard's guilty plea and later associated him at the trial as being involved in the identical transaction in which defendant was involved, no factual basis exists for a claim of prejudice.
An application for a new trial on the ground of newly discovered evidence should be viewed with extreme caution. State v. Jackson, 253 La. 205, 217 So.2d 372 (1968); State v. Williams, 252 La. 1023, 215 So.2d 799 (1968).
Without facts to support the allegations of the motion, and without further explanation of the ground for prejudice, we hold as we did in State v. Epperson, 289 So.2d 495 (La.1974), that this procedure does not necessarily prejudice the defendant. La.Code Crim.Proc. art. 852; State v. Slack, 227 La. 598, 80 So.2d 89 (1955); State v. Rosborough, 156 La. 1049, 101 So. 413 (1924).
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and unless this is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." La.Code Crim.Proc. art. 851. Since it has not been shown by proper evidence that as a result of Augilliard's guilty plea an "injustice has been done the defendant", this bill has no merit. State v. West, 172 La. 344, 134 So.2d 243 (1931).
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.